IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| KOSHIRO KITAZATO,<br>Individually and as President of<br>SOCIETY TO PROTECT<br>DIAMOND HAWAII, a Japan<br>unincorporated association;<br>YOSHIKIMI KOMODA,<br>Individually and as Vice President of<br>SOCIETY TO PROTECT<br>DIAMOND HAWAII; TOSHIHIKO<br>IKENAGA, Individually and as Vice<br>President of SOCIETY TO<br>PROTECT DIAMOND HAWAII;<br>SOCIETY TO PROTECT<br>DIAMOND HAWAII,<br><br>          Plaintiffs,<br><br>     vs.<br><br>BLACK DIAMOND<br>HOSPITALITY INVESTMENTS,<br>LLC,  a Hawaii limited liability<br>company; DIAMOND SOCIETY<br>COMPANY, LTD., a Japanese corp.;<br>DIAMOND RESORT CORP., a<br>Japanese corp.; DIAMOND<br>RESORT HAWAII<br>CORPORATION, a Hawaii corp.,<br>JANIC CORP., a Hawaii corp.,<br>DIAMOND RESORT HAWAII<br>OWNERS ASSOC., INC., a Hawaii<br>nonprofit corp.; DIAMOND<br>RESORT MANAGEMENT, INC., a<br>Hawaii corp.; JOE G. LEONI; | CV. NO. 09-00271 DAE-LEK |

KIMURA KYOKO; JERRY          )
LYNCH; TIMOTHY JOHN          )
YOUNG; JOSEPH M. TOY;        )
MATTHEW GAMBETTA;            )
JONATHAN M. MACMANUS;        )
John Does 1-20; Jane Does 1-20;   )
Doe Partnerships 1-20; Doe   )
Corporations 1-20; Doe Government   )
Entities 1-20,               )
                             )
          Defendants.        )
_____  )

## ORDER DENYING PLAINTIFFS' MOTION
## FOR A PRELIMINARY INJUNCTION

On July 24, 2009, the Court heard Plaintiffs' Motion for a Preliminary

Injunction.  Junsuke Otsuka, Esq., and Joseph W. Lee, Esq., appeared at the

hearing on behalf of Plaintiffs; Lorraine H. Akiba, Esq., Elizabeth J. Wahl, Esq.,

Andrew V. Beaman, Esq., Anne E. Lopez, Esq., and Andrew L. Pepper, Esq.,

appeared at the hearing on behalf of various Defendants.  After reviewing the

motion and the supporting and opposing memoranda, the Court DENIES Plaintiffs'

Motion for a Preliminary Injunction.

## BACKGROUND

The Diamond Hawaii Resort and Spa is located at 555 Kaukahi Street,

Wailea, Maui, on approximately fifteen acres, which includes hotel facilities, a spa,

and fine dining (collectively, the "Hotel").  (Pls.' Motion for a Supplemental

Preliminary Injunction and Other Relief ("Mot.") Ex. 3 at 2-3.) It was developed in 1989 by Diamond Resort Corporation ("DRC"), a Japanese corporation, primarily as a vehicle to permit purchasers/owners to have extended stays in Hawaii.

The ownership of the Hotel is fractionalized into 1,400 tenant-in-common interests. (Mot. Ex. 1 at Arts. 2 & 3.) Each owner holds an undivided, fee simple interest in common with the other owners of the Hotel. (<u>Id.</u> at Art. 2.) Upon acquisition of their interests, owners become members of the Diamond Resort Hawaii Owners Association (the "Association"). (<u>Id.</u> at Art. 3.) The management, control, and operation of the Hotel rests with the Association by virtue of the Declaration of Covenants, Conditions, and Restrictions for Diamond Resort Hawaii Owners Association (the "Declaration"). (<u>Id.</u> at Art. 8.)

The Declaration states that the owners are "required to pay a separate fee ('Management Fee') for the preservation and management of the [Hotel]." (<u>Id.</u> at Art. 34.) The Management Fee for the first year of the term of this Declaration shall be set by [DRC], thereafter it shall be set annually by the Board of Directors." (<u>Id.</u>) The Declaration also provides that "the Chairman shall, by the decision of the Board of Directors, have the authority to revise Management Fees

3

and other fees, as necessary without approval of the Owners Association[.]"  (Id. at Art. 38.)

Lastly, the Declaration states that if the board of directors wants to hold a general meeting, "a notice regarding the content and the agenda must be posted on the Project and mailed to all Owners at their last known address at least thirty (30) days prior to the scheduled meeting."  (Id. at Art. 10(2).)  The agenda of the general meeting is limited to the items of discussion posted before the meeting. (Id. at Art. 14.)

The 2009 annual general meeting of the Association is scheduled to occur at the Hotel on Friday, July 31, 2009 (the "July 31 Meeting").  (Pls.' Motion for Temporary Restraining Order Pending Remand ("TRO Mot.") Ex. A at 2.)  As required by the Declaration, the Association mailed the owners notice of and the agenda for the July 31 Meeting and posted the agenda on the project at least 30 days prior to July 31, 2009.  (Id. at 4.)  The notice informed the owners that at the meeting they will be asked to consider and act upon the following matters: "(1) To ratify the increase in Management Fees to $16,812.93 per fiscal year as approved by the Association's Board of Directors; and (2) To transact such other business as may properly come before the meeting or any adjournment or postponement thereof."  (Id.)

4

On July 9, 2009, Plaintiffs filed a TRO motion in this Court, seeking to enjoin the July 31 Meeting.  On July 10, 2009, the Court found the matter suitable for disposition without a hearing and denied the motion.  (Doc. #15 at 2.)  The Court found the TRO motion inadequate, as it did not specify (1) the harm that may result from the July 31 Meeting, (2) whether that harm was imminent, and (3) the reasoning as to why that harm is irreparable.  (Id. at 4.)  The Court construed the motion as one for preliminary injunction and set a hearing on the matter for July 23, 2009[1].  (Id.)

On July 15, 2009, Plaintiffs filed their supplemental memorandum in support of a preliminary injunction.  (Doc. # 16.)  On July 21, 2009, the Association and several individual defendants filed an opposition to the preliminary injunction motion (Doc. # 28), to which DRHC, Janic, and DRMI joined the following day (Doc. # 30).  Likewise on July 21, 2009, counsel for Black Diamond and several individual defendants filed their opposition (Doc. # 29) and a joinder in the Association's opposition brief (Doc. # 31).  Although not specifically authorized, Plaintiffs then filed a reply brief in support of their motion for a preliminary injunction on July 22, 2009.  (Doc. # 35.)

_____

[1]The hearing was later rescheduled for the following day, July 24, 2009.  (See Doc. # 27.)

<u>STANDARD OF REVIEW</u>

"[I]njunctive relief is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  <u>Winter v. Natural Resources Defense Council, Inc.</u>, 129 S. Ct. 365, 376 (2008).  In order to obtain a preliminary injunction, the moving party must demonstrate "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  <u>Id.</u> at 365 (citing <u>Munaf v. Geren</u>, 128 S. Ct. 2207, 2218-19 (2008); <u>Amoco Prod. Co. v. Gambell</u>, 480 U.S. 531, 542 (1987); <u>Weinberger v. Romero-Barcelo</u>, 456 U.S. 305, 311-12 (1982)); <u>see also</u> <u>Stormans, Inc. v. Selecky</u>, --- F.3d. ---, --- , 2009 WL 1941550, at * 13 (9th Cir. July 8, 2009) (applying heightened standard mandated by <u>Winter</u>).

Plaintiffs seeking preliminary injunctive relief must "demonstrate that irreparable injury is likely in the absence of an injunction[,]" the mere possibility of irreparable harm is insufficient.  <u>Winter</u>, 129 S. Ct. at 375 (finding the Ninth Circuit's standard of a "possibility" of harm too lenient).  "To seek injunctive relief, a plaintiff must show that he is under threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of

the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." Summers v. Earth Island Institute, 129 S. Ct. 1142, 1149 (2009).

If irreparable injury is shown, courts must then "'balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" Winter, 129 S. Ct. at 376 (quoting Amoco Prod. Co., 480 U.S. at 542). In assessing whether the plaintiff has met this burden, the district court has a "duty . . . to balance the interests of all parties and weigh the damage to each." Stormans, --- F.3d. at --- , 2009 WL 1941550, at * 23.

Finally, the court must weigh the public interest, if any, implicated by the injunction. Winter, 129 S. Ct. at 374. When the reach of an injunction is narrow, limited only to the parties, and has no impact on non-parties, the public interest will be "at most a neutral factor in the analysis rather than one that favor[s] [granting or] denying the preliminary injunction." Bernhardt v. Los Angeles County, 339 F.3d 920, 931 (9th Cir. 2003). "If, however, the impact of an injunction reaches beyond the parties, carrying with it a potential for public consequences, the public interest will be relevant to whether the district court grants the preliminary injunction." Stormans, --- F.3d. at --- , 2009 WL 1941550,

7

at * 24 (citing <u>Sammartano v. First Judicial Dist. Court</u>, 303 F.3d 959, 965 (9th

Cir. 2002)).  "[When] an injunction is asked which will adversely affect a public

interest . . . the court may in the public interest withhold relief until a final

determination of the rights of the parties, though the postponement may be

burdensome to the plaintiff."  <u>Weinberger v. Romero-Barcelo</u>, 456 U.S. 305,

312-13 (1982).  In fact, "courts . . . should pay particular regard for the public

consequences in employing the extraordinary remedy of injunction."  <u>Winter</u>, 129

S. Ct. at 376-77.

DISCUSSION

I.      <u>Likelihood of Success on the Merits</u>

          Plaintiffs argue that: (1) the Board of Directors ("Board") of the

Association is acting *ultra vires* because it is (a) illegally operating a hotel for

profit and (b) operating without the adoption of bylaws; and (2) that the sale of

interests and current management arrangement with Defendant Black Diamond

Hospitality Investments, LLC, ("Black Diamond") is in violation of a number of

Hawaii and Federal statutes and breaches the contract Plaintiffs have with the

Association.  (Mot. at 1-2.)

8

1.     <u>Ultra Vires Acts</u>

The Declaration establishes the rights and obligations of owners and the duties of the Board.  Because its provisions expressly run with the land, the Declaration is binding upon all parties having any right, title or interest in the Hotel.  (Mot. Ex. 1 at Arts. 1 & 9.)  The Declaration allocates broad authority to the Board.  Article 27 recites eleven areas of Board responsibility, the last of which includes a broad general conferral of authority (". . . all other matters which are determined by the Board to need the attention of the Board of Directors.").

A.     <u>Operating for Profit</u>

Plaintiffs argue that the Board is acting *ultra vires* of its authority because the Hotel "has been operating a hotel for profit as evidenced by the fact that non-owners were charged a higher room rate."  (Doc. # 35 at 6.)  There is no allegation that profits or earnings have been or will be distributed to the members.

Plaintiffs seemingly believe that if any money is earned by a nonprofit corporation, that thereby renders the corporation for-profit.  But that is a misunderstanding of the law of not-for-profit corporations.  The fact that a corporation is not-for-profit does not mean that its activities or enterprises may not be conducted for gain, profit or net income so long as it is used for the purposes set

9

forth in its articles[2], and there is no pecuniary gain to the incorporators or members

nor distribution of income or profits to them.  <u>See</u> 1 Fletcher Cyc. Corp. § 68.05

> One court has described this principle as follows:

> > The fact, that a corporation is one not for profit, does not
> > mean that its enterprises may not be conducted for gain,
> > profit or net income. It is necessary to distinguish
> > between gain, profit or net income to the incorporators or
> > members and gain, profit or net income to the corporation
> > as a legal entity. For example, there may be a nonprofit
> > corporation, if there is no purpose of pecuniary gain or
> > profit to the incorporators or members, and yet such a
> > corporation may still be conducted for gain, profit or net
> > income to the corporation as a legal entity.

<u>American Jersey Cattle Club v. Glander</u>, 90 N.E.2d 433, 435 (Ohio Ct. App. 1951);

<u>see also</u> <u>State ex rel. Johnson v. Lally</u>, 370 P.2d 971, 973-74 (Wash. 1962).

> Moreover, the Hawaii Nonprofit Corporations Act specifically

includes the following among the powers granted to a non-profit organization:

> > "(4) To purchase, receive, lease, or otherwise acquire,
> > and own, hold, improve, use, and otherwise deal with,
> > real or personal property, or any legal or equitable
> > interest in property, wherever located;

---

[2] The Diamond Hawaii Resort and Spa Articles of Incorporation state that
the purpose of the corporation, in relevant part, is "(b) to provide for the
management, control operations, maintenance, preservation, and development of
the Property, including, but not limited to, the membership hotel, restaurant, garden
bar, meeting rooms, library and gallery, swimming pool, health spa facilities[.]"
(Mot. Ex. 3 at Art. IV.)

10

> (5) To sell, convey, mortgage, pledge, lease, exchange,
> and otherwise dispose of all or any part of its property;
> ...
> (14) To impose dues, assessments, admission, and
> transfer fees upon its members;
> ...
> (16) To carry on a business;
> (17) To do all things necessary or convenient, not
> inconsistent with law, to further the activities and affairs
> of the corporation.

Haw. Rev. Stat. § 414D-52 (emphasis added).

As carrying on the business of a hotel is clearly within the statutory authority of a not-for-profit corporation as defined in the Hawaii Nonprofit Corporations Act, and within the authority of the Board as defined by the Declaration, this Court finds little probability that this part of Plaintiffs' *ultra vires* claim has a likelihood of success on the merits.

2.      Absence of Bylaws

Article XIV of the Articles of Incorporation ("Articles") of the Association states, "[t]he initial Bylaws of the Corporation shall be adopted by the Board of Trustees.  The Bylaws may be altered, amended, or repealed, and new Bylaws may be adopted, by the Board of Trustees as prescribed in the Bylaws." (Mot. Ex. 3 at Art. XIV.)  Plaintiffs argue that as of the date of this instant motion, there have been no bylaws adopted by the Association.  Instead, the corporate

governance has been carried out in accordance with the Declaration and Articles. Plaintiffs contend that this failure to adopt bylaws renders all past acts by the purported board invalid and *ultra vires*.  Moreover, Plaintiffs insist that the "Bylaws for the Use of the Diamond Resort of Hawaii" ("Bylaws for Use") do not count toward the adoption of bylaws contemplated in the Articles because the Bylaws for Use do not set forth rules of corporate governance.

Defendants respond that the Articles do not specify what the bylaws must contain and, therefore, the adoption of the Bylaws for Use satisfies this requirement.  Furthermore, Defendants argue that any set of bylaws would necessarily be limited because the governing document for the Association is the Declaration, which provides all of the governance and management details.

The Hawaii Revised Statutes defines bylaws as "any code or codes of rules (other than the articles) adopted pursuant to this chapter for the regulation or management of the affairs of the corporation irrespective of the name or names by which the rules are designated."  Haw. Rev. Stat. § 414D-14 (emphasis added). Thus, what counts in determining the governing bylaws of a corporation have more to do with function than form.

In this case, the Association has seemingly been governed by the Declaration for the past twenty years.  Plaintiffs would have this Court declare void

all actions taken by the Board since its inception because the Declaration is not entitled "Bylaws," and the document that is entitled "Bylaws" is not expansive enough.  This is the kind of form over function limitation to corporate governance that Haw. Rev. Stat. § 414D-14 strives to avoid.  More importantly, Plaintiffs have not carried their burden in showing a likelihood of success on this claim in such a way as to warrant injunctive relief.

       B.    <u>Violation of Statutes and Breach of Contract</u>

Effective August 20, 2007, Diamond Resort Hawaii Corporation ("DRHC"), Diamond Resort Management Inc. ("DRMI"), and Janic Corporation (collectively, the "Seller"), and Black Diamond as buyer entered into a purchase and sale agreement whereby: (1) Black Diamond agreed to purchase no fewer than 491 ownership units in the Hotel, (2) DRHC agreed to transfer additional ownership units that it may subsequently acquire to Black Diamond, and (3) Black Diamond agreed to assume the management agreement between the Association and DRMI.  This agreement was approved by the Board at its September 20, 2007 meeting.  After hearing that there were some concerns about the sale of ownership units, the Board solicited proxies from owners.  The final vote of 819 proxies had 773 in favor of the sale, 41 opposed, and 5 that were invalid.

Plaintiffs argue that the sale of interest in the Hotel was made in violation of Federal Securities law[3], Hawaii Blue Sky Law[4], Hawaii Land Sales Practices Act[5], Time Share Plan Act[6], and Anti-Trust Law.[7]  Assuming, without deciding, that all of these statutes have indeed been violated by Defendants, Plaintiffs concede that the statute of limitations has already run on each and every one of the above-mentioned laws.  (Mot. at 26.)

More specifically, there is a three-year statute of limitations under the Securities Act[8], a five-year limitation under the Blue Sky laws[9], a four-year limitation under Hawaii Land Sale Practice Act[10], a four-year limitation under the

---

[3] Plaintiffs argue that the subject transaction is an "investment contract," which would fall within the scope of "securities" and therefore within the Securities Act of 1933, citing Koch v. Hankins, 928 F.2d 1471, 1473 (9th Cir. 1991).

[4] Haw. Rev. Stat. § 485.

[5] Haw. Rev. Stat. § 484-4.

[6] Haw. Rev. Stat. § 514-1.

[7] Haw. Rev. Stat. § 480-2(a).

[8] 15 U.S.C. § 77(m).

[9] Haw. Rev. Stat. § 485A-509(j).

[10] Haw. Rev. Stat. § 484-4.

14

Anti-Trust and Consumer Protection Laws[11], and a general six-year limitation for contract or other personal actions.[12]

Plaintiffs argue that because they are completely barred from legal remedies, they are entitled to the equitable remedy of a preliminary injunction. But that is not the law. The equitable remedy of preliminary injunction is specifically designed to only apply when the remedy at law is "inadequate," meaning it is not sufficient to protect the party from a particular harm. See, e.g., Weinberger, 456 U.S. at 311-12. Plaintiffs failure to file a proper claim within the statute of limitations does not make the remedy at law inadequate; it simply means Plaintiffs missed their opportunity to seek legal redress under those statutes. See United States v. Elias, 921 F.2d 870, 874 (9th Cir. 1990) ("Failure to comply with a remedy at law does not make it inadequate so as to require the district court to exercise its equitable jurisdiction.") The probability of success on the merits is determined by the strength of the legal argument, not in lieu of it.

---

[11] Haw. Rev. Stat. § 480-24.

[12] Haw. Rev. Stat. § 657-1.

15

Accordingly, the Court finds Plaintiffs have failed to demonstrate a likelihood of success on the merits.[13]

II.   Irreparable Harm if Relief is Denied

The only harm identified by Plaintiffs is a possible[14] increase in management fees.  In the Order Denying Plaintiffs' Motion for a Temporary Restraining Order, this Court admonished Plaintiffs for not informing this Court "given that the only action taking place at the meeting is a vote on managerial fees, why the harm is irreparable, i.e. why monetary damages would not be adequate compensation."  (Doc. # 15 at 4.)

In answer, Plaintiffs state that "seeking monetary relief is premature because corporate Defendants have not provided any financial accounting records to Plaintiffs.  Thus, Plaintiffs do not have the capacity to determine the breadth of

_____

[13]The Court also notes that it appears Plaintiffs are seeking injunctive relief from this Court while simultaneously arguing in a pending motion for remand to state court (see Doc. # 9) that this Court lacks jurisdiction to even hear this case.  At the hearing on this motion, counsel for Plaintiffs indicated he does not think these positions are inconsistent.  The Court, however, believes such a situation only further undermines Plaintiffs' showing of likelihood of success on the merits.  Furthermore, it is fundamentally problematic to seek redress from a Court that one believes ultimately lacks jurisdiction.

[14] Defendants represented at the hearing on July 24, 2009, that, although the owners have no right to intervene in the Chairman of the Board's discretion to raise management fees, the Board is nevertheless putting the matter to the owners for a vote, which will determine whether the fees are in fact increased.

16

financial damages, if any." (Mot. at 22.) Plaintiffs misunderstand the issue as hinging on the amount of monetary relief sought, instead of the actual legal standard of there being an adequate remedy at law that therefore negates the need of the extraordinary measure of a preliminary injunction.

It is well established that mere economic injury does not constitute irreparable harm. See Sampson v. Murray, 415 U.S. 61, 90 (1974) ("[T]he temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury . . . The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended . . . are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.") (internal citations omitted); Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc., 944 F.2d 597, 603 (9th Cir. 1991) ("[E]conomic injury alone does not support a finding of irreparable harm, because such injury can be remedied by a damage award."); L.A. Mem'l Coliseum Comm'n v. Nat'l Football League, 634 F.2d 1197, 1202 (9th Cir. 1980) ("monetary injury is not normally considered irreparable"); Colo. River Indian Tribes v. Town of Parker, 776 F.2d 846, 850 (9th Cir. 1985)

("Our conclusion was based on the well established principal that such monetary injury is not normally considered irreparable.") (citations omitted).

Moreover, Defendants argue that the appropriate forum for Plaintiffs to dispute the increase in fees is the very meeting Plaintiffs seek to enjoin.  The July 31 Meeting affords the owners an opportunity to discuss and vote upon the management fees.  Yet even if Plaintiffs could predict defeat in the vote regarding the fees, such economic injury does not constitute the type of harm needed to justify a preliminary injunction.[15]  As such, the Court finds that Plaintiffs have failed to demonstrate irreparable harm.

III.   Balance of Potential Harm

Plaintiffs merely reemphasize that "the current Board members are unauthorized" when arguing that the balance of the equities tip in their favor.  (Doc. # 35 at 13.)  Defendants, on the other hand, point to factors that weigh against a preliminary injunction.  First, Defendants argue that enjoining the July 31 Meeting and preventing the Association and Black Diamond[16] from taking action

_____

[15] Plaintiffs' arguments with respect to the potential harm caused by the foreclosure action are inapplicable as no owner named in the foreclosure action is a plaintiff in this litigation.

[16] In April 2002, the Association and DRMI entered into a hotel management agreement for the management and operation of the Hotel ("Management Agreement").  Article 32 of the Declaration allows for such a transfer of

necessary to maintain, preserve, and care for the Hotel facilities will result in the continued deterioration of the physical plant, furniture, and fixtures.

The management fees, which began at $580 in 1989, have seemingly never been raised, which has resulted in both massive debt to the Association and deterioration of the Hotel.[17]  Defendants maintain that the Hotel has never undergone a major renovation in its twenty-year history.  The furnishings, carpet, fixtures, and mechanical systems are old and in need of replacement and refurbishment.  In the midst of declining occupancy and revenues resulting from the poor state of the economic climate, Defendants continue, the Board has increased the maintenance fees in an attempt to keep the property competitive in

management responsibilities and states that, "The Chairman may, by authority of Article 28, entrust from time to time the duties described in Articles 30 and 31 either to a Project Manager, which shall be either Diamond Resort Hawaii Corporation, an affiliate of [DRC], or to a management company selected by the Chairman."  On March 10, 2008,  the Association consented to DRMI's assignment of the Management Agreement to Black Diamond.

[17] The original sales contract from 1989 submitted to this Court lists $580 as the original yearly management fee and, given Plaintiffs' statements that they want it to continue to be $580, this Court assumes that the fee has remained the same throughout this time.

the Wailea hotel market.  Preventing them from raising the fees would only exacerbate the Hotel's already poor condition.[18]

Second, enjoining Board action would prevent the Association and Black Diamond from making everyday decisions that affect reservations, plant operations, guest services, landscaping, maintenance, and life safety systems. Given the length of litigation in most cases, Defendants prospective potential delay is not insignificant.  The balance of hardships, therefore, does not tip sharply in Plaintiffs' favor.  See American Tunaboat Assoc. v. Brown, 67 F.3d 1404, 1411 (9th Cir. 1995).

IV.    Public Interest

Finally, this Court is required to examine the public interest in determining the appropriateness of a preliminary injunction.  Courts in this Circuit have sometimes subsumed this inquiry into the balancing of the hardships, see, e.g. Caribbean Marine Services Co. v. Baldridge, 844 F.2d 668, 874 (9th Cir. 1988), when the potential for impact on non-parties is minimal.  Sammartano v. First Judicial Dist. Court, 303 F.3d 959, 974 (9th Cir. 2002)  It is better seen as an

---

[18] This Court reiterates its shock at the amount of the increase – from $580 to $16,813.  Nevertheless, the damage in question is still "only" a matter of money, and therefore does not rise to the irreparable harm needed to justify an injunction.

element that deserves separate attention in cases where the public interest may be affected.  See Fund for Animals v. Lujan, 962 F.2d 1391, 1400 (9th Cir. 1992).

In this case, the only parties affected are the immediate Plaintiffs and Defendants, and the remaining owners.[19]  Therefore, there is minimal "public interest" to consider.  The requested relief does not, for example, involve a threat to community safety or an infringement of constitutional rights.  See, e.g., Winter, 129 S. Ct. 356 (dealing with threats to national security); Iowa Right to Life Comm., Inc. v. Williams, 187 F.3d 963 (8th Cir. 1999) (dealing with First Amendment rights); G&V Lounge, Inc. v Mich. Liquor Control Comm'n, 23 F.3d 1071 (6th Cir. 1994) (dealing with the party's constitutional rights).  However, the Court does consider the effect that the proposed injunction would have on the other owners who would be enjoined from exercising their rights under the Declaration. Any such injunction would appear to be detrimental to their interests.  Thus, to the extent that the public interest is a factor in this case, the Court finds that it weighs against imposing the extraordinary measure of injunctive relief.

V.    Conclusion

Given that Plaintiffs have failed to demonstrate a likelihood of success on the merits, irreparable harm, a balance of equities tipping sharply in their favor,

---

[19] Defendant Black Diamond alone owns 844 of the 1400 interests.

or the need of protection of the public interest, the extraordinary measure of relief of the preliminary injunction is not warranted.  As such, Plaintiffs' motion is DENIED.

CONCLUSION

For the reasons stated above, the Court DENIES Plaintiffs' Motion for Preliminary Injunction.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 29, 2009.



_____
David Alan Ezra
United States District Judge

Kitazato et al. v. Black Diamond Hospitality Investments, LLC, et al., CV No. 09-00271 DAE LEK; ORDER DENYING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION