IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

KOSHIRO KITAZATO, ETC., ET )   CIVIL NO. 09-00271 DAE-LEK
AL., )
 )
          Plaintiffs, )
 )
     vs. )
 )
BLACK DIAMOND HOSPITALITY )
INVESTMENTS, LLC, ET AL., )
 )
          Defendants. )
_____ )


**FINDINGS AND RECOMMENDATION TO GRANT
<u>PLAINTIFFS' MOTION TO REMAND TO STATE COURT</u>**

Before the Court is Plaintiffs Koshiro Kitazato,

Yoshikimi Komoda, Toshihiko Ikenaga and Society to Protect

Diamond Hawaii's ("Plaintiffs"), Motion to Remand to State Court

("Motion"), filed on July 7, 2009.  Defendants Diamond Resort

Hawaii Corporation, Janic Corporation and Diamond Resort

Management, Inc. ("Removing Defendants") filed their memorandum

in opposition on July 23, 2009 and Plaintiffs filed their reply

on July 31, 2009.  The Court finds this matter suitable for

disposition without a hearing pursuant to Rule LR7.2(d) of the

Local Rules of Practice of the United States District Court for

the District of Hawaii ("Local Rules").  After careful

consideration of the Motion, supporting and opposing memoranda,

and the relevant legal authority, this Court FINDS and RECOMMENDS

that Plaintiffs' Motion be GRANTED for the reasons set forth

below.

## BACKGROUND

Plaintiffs allege that in 1988, Defendant Diamond Resort Corporation ("DRC") developed a resort located on the Island of Maui, now known as Diamond Hawaii Resort and Spa (the "Resort").  [First Amended Complaint ("FAC") ¶ 22.]  Undivided real estate and joint membership interests in the Resort were sold by DRC to 1,400 Japanese persons or entities, including Plaintiffs (collectively, "Resort Members").  [Id. ¶ 25.]  In connection with the Resort's development, Defendant Diamond Resort Hawaii Owners Association, Inc. ("AOAO"), a Hawaii non-profit corporation, was formed and comprised of the Resort Members.  [Id. ¶ 10.]  Defendant Diamond Resort Hawaii Corporation ("First Manager"), a Hawaii corporation and subsidiary of DRC was also formed to manage the Resort.  [Id. ¶¶ 8, 40.]  DRC also filed Declaration of Covenants, Conditions and Restrictions ("Declaration") for the AOAO, containing the rights of the Resort Members and providing for the management of the Resort.  [Id. ¶¶ 29, 35.]  Plaintiff alleges that the Declaration was drafted in such a manner as to provide DRC with complete control over the First Manager, the AOAO and the management of the Resort.  [Id. ¶¶ 28-41.]

In 2002, Plaintiffs allege that Defendant Diamond Society Company, Ltd. ("Diamond Society"), a Japan corporation,

acquired DRC's and the First Manager's interests.[1]  [Id. ¶ 46.]
Diamond Society then replaced the First Manager with Defendant
Diamond Resort Management, Inc. ("Second Manager"), a Hawaii
corporation and subsidiary of Diamond Society, to manage the
Resort.  [Id.]  Plaintiffs allege that Diamond Society, through
its unlawful control over the AOAO, caused the AOAO to enter into
management agreements with the Second Manager without the consent
of the Resort Members and to allow the Second Manager to take
profits which could have rightfully belonged to the AOAO.  [Id.
¶¶ 49, 51.]  Further, no notices of general assembly meetings or
management of financial reports of the AOAO were provided to the
owners after Diamond Society took over the Resort.  [Id. ¶ 43.]

Sometime after its acquisition of DRC, Diamond Society,
through Defendant Janic Corporation ("Janic"), a Hawaii
corporation, and First Manager, began acquiring individual
interests in the Resort of various Resort Members at a cost
significantly less than the original purchase prices by informing
them that the resort had been mismanaged and that the real estate
was of little value.  [Id. ¶ 48.]  Plaintiffs allege that the
Resort Members were not provided with any notice of any AOAO
meeting regarding its approval for such purchases.  [Id. ¶ 54.]
Moreover, the purchases occurred despite the fact that the AOAO

---

[1] Plaintiffs also allege that Diamond Society never obtained
a Certificate of Authority to do business in Hawaii pursuant to
Hawaii law.  [Id. ¶ 47.]

retained preemptive rights to buy back the interests from the individual Resort Members, demonstrating that the AOAO was acting as an instrument of Diamond Society.  [Id. ¶ 55.]

In February 2007, Defendant Black Diamond Hospitality Investments, LLC ("Black Diamond"), a Hawaii limited liability company, was formed.  [Id. ¶¶ 5, 56.]  Thereafter, in November 2007, the Resort Members received notice of a special meeting by the AOAO concerning the acquisition of the Second Manager by Black Diamond.  [Id. ¶ 57.]  Despite opposition by some Resort Members to the transfer at that meeting and a subsequent meeting, a Notice of Resolution approving the transfer was sent out to the Resort Members requesting their vote on the matter.  [Id. ¶¶ 58-62.]  A Notice of Resolution regarding the prior purchases by Janic and First Management was also included.  [Id. ¶ 63.]  However, the issue regarding the prior purchases was not on the previous meetings agendas and the Resort Members did not otherwise receive a copy of the proposed terms of sale for review.  [Id. ¶¶ 63-64.]  Apparently, the AOAO approved both the acquisition of Second Manager by Black Diamond and the purchases of Resort Members' interests by Janic and Fist Manager.  [Id. ¶ 66.]

In March 2008, the AOAO entered into a Hotel Management with the Second Manager.  [Id. ¶ 67.]  Black Diamond then brought in non-defendant Pacifica Hotel Company ("Pacifica") in May 2008

to co-manage the Resort with Second Manager.  [Id. ¶ 71.]

Plaintiff believes that there recently may been a change in co-

manager from Pacifica to non-defendant Aqua Hotel and Resorts

("Aqua").  [Id. ¶ 74.]  Plaintiff alleges that none of the

Defendants Black Diamond, DRC, Diamond Society, First Manager,

Second Manager or non-defendants Pacifica and Aqua hold a

condominium hotel operator license, condominium managing agent

registration, or real estate brokerage license as required under

Hawaii revised Statutes § 467-30.  [Id. ¶ 75.]

       Also in May of 2008, Janic and First Manager conveyed

the interests that they had purchased from various individual

Resort Members, to Black Diamond.  [Id. ¶¶ 68-69.]  The interest

conveyed by Janic was 190/1400 and by First Manager was 310/1400.

[Id.]  Plaintiffs allege that Janic and First Manager continued

to acquire individual interests of the remaining Resort Members

after May 2008 in an attempt to acquire a 100% stake in the

Resort on behalf of Black Diamond.  [Id. ¶¶ 70, 72.]  Plaintiffs

believe that Black Diamond, Second Manager and Janic currently

own a combined 910/1400 (65%) of the Resort Members' interests.

[Id. ¶ 73.]

       On December 24, 2008, Plaintiffs filed their original

complaint against Defendants Black Diamond, DRC, Diamond Society,

First Manager, Janic, AOAO, Joe G. Leoni, Kimura Kyoko,

Jerry Lynch, Timothy John Young, Joseph M. Toy, Matthew Gambetta,

and Jananthan M. MacManus, in the Circuit Court of the Second
Circuit, State of Hawaii.[2]  [Mem. in Supp. of Motion at 3.]  The
original complaint alleged that the defendants violated Hawaii
Revised Statutes Chapter 414D (Hawaii Non-Profit Corporations
Act) and alleged three counts of action seeking (1) an accounting
of the financial and other business records regarding the AOAO
and the Resort; (2) declaratory relief and a determination that
certain covenants in the Declaration, including those concerning
proxy rights, board and management selection process, and special
meetings, are void due to illegality, being against public
policy, or in violation of Chapter 414D; and (3) declaratory
relief and a determination that there is an inherent conflict of
interest among the AOAO Board that is negatively impacting
Plaintiffs' voting rights under the Declaration.  [FAC ¶¶ 82–
109.][3]

        After the filing of the original complaint, some but
not all of the defendants in the action were served.[4]  The

---

    [2] The individual defendants are all alleged to be directors
of the AOAO's Board.  [FAC ¶¶ 12-18.]

    [3] The original complaint has not been submitted as an
exhibit to any of the briefings.  Apparently, though, the only
difference between the original complaint and the First Amended
Complaint is the addition of a defendant to the First Amended
Complaint.  [Mem. in Supp. at 4.]

    [4] Plaintiffs state that Defendants Black Diamond, Joe G.
Leoni, Timothy John Young and Joseph M. Toy were served with the
original complaint through their counsel on January 21, 2009.
                                              (continued...)

Removing Defendants were not among the defendants initially served.  On March 25, 2008, Plaintiffs filed its First Amended Complaint in the state court, adding Defendant Second Manager. [FAC.]  The Removing Defendants were then served with the First Amended Complaint on June 8, 2009.  [Mem. in Opp. at 4.]  On June 15, 2009, the Removing Defendants removed this action. [Notice of Removal, filed June 15, 2009.]

        In the Notice of Removal, the Removing Defendants assert that the removal is timely – they were served with the First Amended Complaint on June 8, 2009 and filed their Notice of Removal on June 15, 2009, within the thirty day time limit set forth under 28 U.S.C. § 1446(b).  [Id. at 3.]  Jurisdiction and basis for removal are asserted under 28 U.S.C. § 1332(d), Class Action Fairness Act ("CAFA").  [Id. at 4.]  In particular, the removing Defendants contend that this is a "mass action" under CAFA in which:

> (a) there are more than 100 or more persons seeking monetary relief on claims involving common questions of law or fact; (b) at least one plaintiff's claim exceeds $75,000; (c) the Plaintiffs have a different citizenship from one or more defendants; and (c) [sic] the claims of the plaintiffs in the aggregate, exceed the sum or value of $5,000,000, exclusive of interest and cost.

[Id. (citing 28 U.S.C. § 1332(d)).]

---

    4(...continued)
[Id. at 3.]

In reliance on a "demand letter" received by Plaintiff

Koshiro Kitazato (the "Kitazato Letter"), the Removing Defendants

contend that Plaintiff Society to Protect Diamond Hawaii is

comprised of 490 co-owners of the Resort.  [Id. at 4, Exh. B.]

They further contend that each individual co-owners' claim is

$80,049.26, and that in the aggregate, the total claim exceeds

$39,000,000.  [Id. at 5-7.]  Finally, minimal diversity of

citizenship under CAFA exists because Plaintiffs are citizens of

Japan and the defendants include both citizens of Hawaii and

Japan.  [Id. at 5 (citing 28 U.S.C. § 1332(d)(2); Abrego Abrego

v. The Dow Chemical Co., 443 F.3d 676, 680 n.5 (9th Cir. 2006)).]

In their Motion, Plaintiffs assert that removal was

improper because the First Amended Complaint did not allege a

class action and the issue is not otherwise ripe.  The case is

not about monetary relief or class certification but instead

seeks removal of the AOAO Board to eliminate current conflicts of

interest which are in violation of Hawaii's non-profit laws.  The

case also seeks an accounting of the defendants' financial and

business records and a determination that Plaintiffs' voting

rights as Resort Members under Hawaii non-profit laws have been

violated.

Plaintiffs assert removal is also improper based on a

lack of diversity under 28 U.S.C. § 1332.  First, the Removing

Defendants cannot show by a preponderance of the evidence that

this is a mass action under CAFA.  There are no facts alleged in
the First Amended Complaint indicating federal jurisdiction under
CAFA.  Moreover, the Removing Defendants' reliance on the
Kitazato Letter to extrapolate that Plaintiffs' claims come under
CAFA is simply conclusory and goes beyond the face of the
complaint contrary to <u>Harris v. Bankers Life & Cas. Co.</u>, 425 F.3d
689 (9th Cir. 2005).[5]  Therefore, the "minimal diversity"
standard under CAFA is inapplicable and the Removing Defendants
must show complete diversity, which they cannot.  Here,
Plaintiffs are all citizens of Japan and the defendants in this
action comprise both citizens of Hawaii and Japan, defeating
complete diversity.[6]

        Plaintiffs also contend that under the "first-served"
rule, which Plaintiffs urge this Court to adopt, the 30 day
removal period began on the date of the service of the first
defendant.  Alternatively, Plaintiffs contend that the removal
period began to run on either March 25, 2009, upon filing and
service of the First Amended Complaint, or April 7, 2009, when
defendants filed a Motion for Definite Statement in the state
court refuting the state court's jurisdiction over the matter.

---

    [5] Plaintiffs also assert that the use of the Kitazato Letter
as evidence they are making a monetary claim is precluded under
Rule 408 of the Hawaii Rules of Evidence.

    [6] The Removing Defendants do not dispute that complete
diversity of citizenship is lacking in this matter.

Plaintiffs argue that the Removing Defendants, although served on June 8, 2009, are bound by the removal knowledge of the other defendants.  Thus, in either event, the removal filed on June 15, 2009, exceeded the 30 day removal period and is untimely.[7]  Finally, Plaintiffs request their attorneys' fees and costs expended in bringing the instant Motion.

In their opposition, the Removing Defendants argue that Plaintiffs need not allege a "class action" in order for the case to be removable.  Instead, they are permitted to remove a case within 30 days of receiving papers upon which it may first be ascertained the case is removable.  Here, the Removing Defendants argue that although it has not been labeled a "class action," it bears all of the characteristics of a "mass action" under CAFA since (1) it is a civil action, (2) monetary relief has been valued at over $80,000 per putative plaintiff, and (3) Plaintiffs, led by a purported association, purport to represent 490 people, whose claims are proposed to be jointly tried in this action on the basis of common questions of law and fact.[8]  [Mem. in Opp. at 6 (citing 28 U.S.C. § 1332(d)(11)(B)).]

---

[7] Plaintiffs also appear to argue that removal cannot be sustained as the removal has not been consented to and joined by the other defendants.

[8] The Removing Defendants disagree that this case is not about monetary relief and note that in actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.

The Removing Defendants also argue that CAFA does not require joinder by all defendants.  CAFA specifically allows class actions to be removed by "by any defendant without the consent of all defendants."  [Id. at 9 (quoting 28 U.S.C. § 1453(b)).]  Further, under CAFA, minimal, but not complete, diversity is required.  Here, because Plaintiffs are all Japan citizens and at least one defendant is a Hawaii citizen, minimal diversity under CAFA is met.

The Removing Defendants also disagree that their removal was untimely.  Given that CAFA does not require the consent of all the defendants, each defendant is afforded its own 30 day removal period and the "first-served" rule advocated by Plaintiffs is inapplicable.  Thus, the Removing Defendants argue that removal of this case was timely as the Notice of Removal was filed well within 30 days of service on them of the First Amended Complaint.  Finally, the Removing Defendants assert that Plaintiffs have waived their ability to seek remand by engaging in post-removal affirmative-relief motions practice.  The Removing Defendants argue that by filing motions in this district court for temporary restraining order and preliminary injunction, Plaintiffs have acquiesced to federal jurisdiction and thus waived their right to seek remand.

In their Reply, Plaintiffs mainly reiterate the arguments set forth in their supporting memorandum.  In addition,

Plaintiffs disagree that they waived their right to seek remand based on motions filed in this district court.  Plaintiffs point out that subject matter jurisdiction can never be waived or consented to.  Moreover, Plaintiffs argue that the motions filed did not seek affirmative relief but simply sought to preserve the status quo in light of their pending remand motion.  Further, Plaintiffs assert that in such motion, they specifically reserved their right to contest federal jurisdiction.

## DISCUSSION

Under 28 U.S.C. § 1447(c), a party may bring a motion to remand to challenge removal of an action from state court to federal court.  A state court defendant's removal of an action to federal court is proper under 28 U.S.C. § 1441(a) as long as the action could have originally been filed in federal court.  Section 1441 is, however, strictly construed against removal.  See Nishimoto v. Federman-Bachrach & Assocs., 903 F.2d 709, 712 n.3 (9th Cir. 1990).  The party seeking to remove the case bears the burden of establishing the propriety of removal and the existence of federal jurisdiction.  See Westinghouse Elec. Corp. v. Newman & Holtzinger, P.C., 992 F.2d 932, 934 (9th Cir. 1993); Nishimoto, 903 F.2d at 712 n.3.  Courts resolve any doubts about removal in favor of remanding the case to state court.  See Duncan v. Stuetzle, 76 F.3d 1480, 1485 (9th Cir. 1996) ("[F]ederal jurisdiction 'must be rejected if there is any doubt

as to the right of removal in the first instance.'" (quoting <u>Gaus v. Miles, Inc.</u>, 980 F.2d 564, 566 (9th Cir. 1992))).

## I.    <u>Original Jurisdiction Under CAFA</u>

The Removing Defendants invoke this Court's original jurisdiction under 28 U.S.C. § 1332(d) on the basis that Plaintiffs' case constitutes a removable "mass action."  Under CAFA, federal diversity jurisdiction is extended to both class actions and certain civil actions, defined as "mass actions." <u>Tanoh v. Dow Chemical Co.</u>, 561 F.3d 945, 953 (9th Cir. 2009). The "term 'mass action' means any civil action in which the monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact."  28 U.S.C. § 1332(d)(11)(B)(I) (internal parenthetical omitted).  "[A] qualifying mass action shall be deemed to be a class action removable to federal court under the Act, so long as the rest of CAFA's jurisdictional requirements are met."  <u>Tanoh</u>, 561 F.3d at 952 (citation and internal quotation marks omitted).  Those additional requirements include (1) that the aggregate amount in controversy exceed $5,000,000, (2) minimal diversity, in that one plaintiff must be a citizen of state or foreign country different from that of any defendant, and (3) plaintiff's individual claims must satisfy the $75,000 jurisdictional amount required for federal diversity jurisdiction.  <u>See</u> <u>id.</u>  The burden of establishing removal

jurisdiction under CAFA rests with the proponent of federal jurisdiction.  <u>Abrego Abrego v. Dow Chem. Co.</u>, 443 F.3d 676, 685 (9th Cir. 2006).

The threshold question the Court must first answer is whether Plaintiffs' instant action concerns the monetary relief claims of more than 100 persons.  The Removing Defendants argue that the numerosity requirement is met based on Plaintiff Society to Protect Diamond Hawaii's ("Plaintiff Society") purported representation of approximately 490 Resort Owners.  This Court disagrees.  First, as recognized by the Ninth Circuit, "plaintiffs in a mass action, unlike in a class action, do not seek to represent the interests of parties not before the court." <u>Tanoh</u>, 561 F.3d at 952.  In other words, mass actions simply concern the direct claims of individual plaintiffs without regard to any "putative plaintiff class," as is typical in a class action.  Here, there is nothing before this Court even suggesting that the purported 490 other Resort Owners have appeared or otherwise made direct claims in this action.  Indeed, the First Amended Complaint, upon which the Removing Defendants rely to assert the timeliness of removal, indicates that there are no more than the four direct plaintiffs referenced therein.

Second, even assuming that the numerosity requirement regarding a mass action could be satisfied by including claimants that are not direct participants in the case, the Removing

Defendants still do not show there are more than 100 claimants.

The Removing Defendants' reference to certain paragraphs in the

First Amended Complaint and the Kitazato Letter as support for

the proposition that there are 100 or more claimants in this

action is speculative extrapolation at best.  For example, in

their Notice of Removal, the Removing Defendants cite to

paragraphs 4, 25, and 73.  At most, those paragraphs show that

(1) Plaintiff Society is an unincorporated association "comprised

of co-owners" of the Resort, (2) DRC sold interests in the Resort

to 1,400 Japanese consumers, persons and entities, and (3)

Defendants Black Diamond, Second Manager and Janic own a combined

910/1400 (65%) ownership in the Resort.  Similarly, the Kitazato

Letter, although purportedly authored by Plaintiff Society, is

void of any mention or reference to the amount of Resort co-

owners that it purports to represent.[9]  These references are a

long way from establishing, for purposes of federal jurisdiction,

that Plaintiff Society represents 100 or more Resort Owners in

this action.[10]  Accordingly, this Court finds that the Removing

---

[9] The Court notes that the Kitazato Letter is an unsigned letter attached as an exhibit to the Declaration of Andrew L. Pepper, Esq., counsel for the Removing Defendants, and is not otherwise authenticated.

[10] The Removing Defendants contend that the thirty-day removal period was triggered upon receipt of the First Amended Complaint, which revealed the basis for removal.  [Notice of Removal at 3 (citing 28 U.S.C. § 1446(b)).]  The Court notes, however, that "[i]f no ground for removal is evident in that
(continued...)

Defendants have not shown that Plaintiffs' instant civil action satisfies the numerosity requirement for a mass action under CAFA.

Although the Court could end the analysis here and find that jurisdiction under CAFA is lacking, for purposes of completeness, it turns next to the other threshold question of whether Plaintiffs' civil action is one for monetary relief.  The Removing Defendants argue that in actions involving declaratory and injunctive relief, the amount in controversy is measured by the value of the object litigation, and "[h]ence, a claim for monetary relief is not a prerequisite for removal."  [Mem. in Opp. at 5.]  This Court disagrees.  While looking to the value of the object litigation may be useful in determining the "amount in controversy" requirement, such determination is separate and apart from whether a civil action constitutes a "mass action" under CAFA in the first instance.[11]  In other words, the Removing Defendants cannot escape CAFA's plain language, which, as explained above, defines a "mass action" as a civil action concerning "the <u>monetary relief claims</u> of 100 or more persons."

_____

[10](...continued)
pleading, the case is 'not removable' at that stage."  <u>Harris v. Bankers Life & Cas. Co.</u>, 425 F.3d 689, 694 (9th Cir. 2005).

[11] As explained in <u>Tanoh</u>, removal is extended to "qualifying mass actions," i.e., civil actions that concern the monetary relief claims of 100 or more persons, but that such actions must still satisfy the other CAFA jurisdictional requirements such as "amount in controversy" and minimal diversity.  561 F.3d at 952.

28 U.S.C. § 1332(d)(11)(B)(I) (emphasis added).  As with the numerosity requirement, then, CAFA's plain language requires the removing Defendants to show that the plaintiffs' civil action seeks monetary relief.

The Court finds that in this civil action, such showing cannot be made.  On the face of the First Amended Complaint, there is no reference or mention at all that Plaintiffs are seeking monetary relief.  Instead, Plaintiffs request for (1) an accounting of the defendants' finances, business records and accounts, (2) declaratory and injunctive relief to secure their voting rights under Hawaii non-profit corporation laws, and (3) declaratory and injunctive relief regarding their claim that the AOAO Board is operating under a conflict of interest to their detriment.  Accordingly, the Court finds that the Removing Defendants have not shown that Plaintiffs' instant civil action satisfies the monetary relief claim requirement for a mass action under CAFA.[12]

## II.  **No Waiver Of Right To Seek Remand**

The Removing Defendants contend that in any event, Plaintiffs have waived their right to remand by engaging in post-

---

[12] Based on the above findings, the Court need not address the issue of whether the Removing Defendants have met their burden of showing that Plaintiffs' civil action satisfies the other CAFA jurisdictional requirements.  See generally 28 U.S.C. § 1332(d); Tanoh, 561 F.3d at 952.  For the same reason, the Court also need not reach whether the Removing Defendants' removal was timely.

removal affirmative relief litigation in this district court. [Mem. in Opp. at 10-11 (citing Riggs v. Plaid Pantries, Inc., 233 F. Supp. 2d 1260, 1271 (D. Or. 2001)).] As correctly pointed out by Plaintiffs, however, the district court's subject matter jurisdiction cannot be waived. In pertinent part, 28 U.S.C. § 1447(c) provides:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(b). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

Thus, Plaintiffs' post-removal filings have no bearing on whether this district court has subject matter jurisdiction, pursuant to CAFA, over Plaintiffs' claims.[13] Accordingly, Plaintiffs did not waive their right to seek remand of this removal action.

## III. Entitlement To Removal Expenses

When a federal court remands a case, it "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c) The United States Supreme Court has stated that: "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable

---

[13] Moreover, unlike Riggs, the Plaintiffs here filed their motion for remand before filing their temporary restraining order motions and specifically preserved their right to seek remand in such motions.

basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied."  <u>Martin v. Franklin Capital Corp.</u>, 126 S. Ct. 704, 711 (2005) (citations omitted).

As set forth above, neither the First Amended Complaint nor the Kitazato Letter, upon which the Removing Defendants relied, provide any objective basis for removal under CAFA. Despite this fact, the Removing Defendants removed this case and have caused Plaintiffs to incur expenses related to such removal. Therefore, the Court finds that the Removing Defendants did not have an objectively reasonable basis to seek removal and that an award of attorneys' fees and costs is appropriate and warranted in this case.

<u>**CONCLUSION**</u>

On the basis of the foregoing, this Court FINDS and RECOMMENDS that Plaintiffs Koshiro Kitazato, Yoshikimi Komoda, Toshihiko Ikenaga and Society to Protect Diamond Hawaii's Motion to Remand to State Court, filed on July 7, 2009, be GRANTED.  The Court further RECOMMENDS an award of fees and costs under § 1447(c).  If this Court's recommendations should be adopted, then it is further RECOMMENDED that a deadline should be given for counsel to submit a declaration in conformance with Local Rules 54.2 and 54.3(d) to support Plaintiffs' request for fees and costs.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, October 5, 2009.



     /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge

**KOSHIRO KITAZATO, ET AL. V. BLACK DIAMOND HOSPITALITY INVESTMENTS LLC, ET AL; CIVIL NO. 09-00271 DAE-LEK**; FINDINGS AND RECOMMENDATION TO GRANT PLAINTIFFS' MOTION TO REMAND TO STATE COURT